Again, for the record, Tony Gallagher, Federal Defender for the District of Montana. And in this particular case, I represent Deanna Marie Blackman. I mean, it's obvious that this, too, is one of those cases where specific intent is an issue with respect to the addition of under 2A 2.2b2b, use of a dangerous weapon with the specific intent to cause bodily injury. I'd like to take a moment for a second and drop a footnote. I indicated that these cases are related. They're related in more ways than one. Gene Gardepe is Deanna Blackman's father-in-law. And wasn't the victim of Ms. Blackman her cousin? Patricia Renville, yes. I mean, this is the Blackfoot Indian Reservation, and there's a lot of close relations. Yes. Yes, Your Honor, there is. It's a very small community. Indeed. In this particular case, unlike before, I don't have on, in the PSR, the fact that Deanna was intoxicated. She wisely did not talk to the police. But at the time of her change of plea hearing, she made it quite clear on the record that she was intoxicated, and a judge hadn't accepted her change of plea, and she did make those statements under oath. And so it was testimony that she was intoxicated at the time the offense occurred. Unfortunately, Judge Paez, I do not have a statement on her part of what her BAC was. I don't know what it was. She just indicated that she was very intoxicated. In this particular case, though, we raise an additional issue besides the specific for serious bodily injury under 2A2.2b3b. And in this particular instance where the judge certainly has the authority and the obligation to resolve issues in dispute, we likewise argue that he never resolved the issue of intoxication, which was in dispute, but he never resolved the issue of credibility. Critical to Ms. Blackman's appeal is the issue of credibility. It was never really addressed by the trial court, nor did the government address it in its answer brief. The testimony of the victim of Patricia Renville stands 180 degrees opposed to the statement that she made in writing to the United States Probation Office, which was confirmed in a telephone conversation by the probation officer to Ms. Renville, where she adopted again that statement of February 9, 2009. And when she took the stand and testified adversely, I called the probation officer, and the probation officer said, oh, yeah, that's what she told me, that she adopted that statement. But she is the cousin of the defendant, right? Your Honor, cousin of the Blackfeet Indian Reservation could mean a lot of different things. They were distant. In every family, Mr. Gallagher. That's correct. In this particular case, they were distantly related. And if the Court is intimating that there was some pressure on Ms. Renville I'm asking the question. I'm not intimating. There's nothing in this record to indicate that she was in any way pressured, which is why, as a matter of fact, Mr. Chisholm made that phone call to make sure that she adopted that statement. We did have live testimony from the victim. We did. And from the, who else testified? That was it. The probation officer testified for the defense, indicating that that's not what she said. There's no requirement that the fact finder, this is not an immigration hearing, and we don't have to make an adverse credibility finding. If the Court listens to the testimony of the victim, considers what the defendant has to say, either at her change of plea hearing or through the pre-sentence report, why can't the fact finder do what Judge Haddon did at ER 42, which is page 25 of the sentencing transcript, starting at line 15, in which he basically makes factual findings, again, as he did in Gardope, from the events of the assault in order to make the requisite finding of intent to do bodily harm? Well, Your Honor, most respectfully, I think that Gall requires more than that. It requires the district court to adequately explain the chosen sentence. Here he's explaining his sentence, but he never resolves the credibility dispute. Never. Under Rule 32, he's got to do that. Under Gall, he's got to do that. He never did it. I'm not sure I agree with you. I think that if he listens to conflicting testimony and makes findings, I don't think Gall requires that he actually say, I disbelieve Ms. Blackman and I believe the victim. Does it? That's not the credibility issue. It's I disbelieve Ms. Renville or I disbelieve Ms. Renville. She testified 180 degrees different than what she told the probation officer two months before. Right. How does that affect the issue? What issue does this credibility issue relate to? Does it relate to the serious injury or does it relate to whether or not your client was intoxicated? Your Honor, I think, frankly, it goes more to the severity of the injury. Right. So but don't you, for purposes of that inquiry, don't you look to what happened on the night of the incident? Well, sure. Sure. And don't we have in the PSR the statements from the doctor? Well, there's... Stephen Wagner treated the victim and stated the assault resulted in serious bodily injury due to the extreme physical pain and protracted and obvious disfigurement. Your Honor, let's take that and parse it. Absolutely. That's at the time of the incident. Don't deny it. And then two years later she writes this letter. She writes that letter. And then she testifies at the hearing and she says something entirely different than what was in that letter. Which negates the protracted injury, by the way. And also, well, you've quoted from Dr. Wagner. Yes. And Dr. Wagner indicates that it was severe and protracted injury. Well, it's not protracted injury if Patricia Renville says, I'm okay. I feel fine. I'm not injured. We know at the time. Isn't it the one where she had to have some stitches? Yeah. She had some stitches, but she was in the at most she was in the hospital for 120 minutes. At most she was in the hospital for 120 minutes. Her definition of protracted injury and the doctor's definition are probably different because if you have, you know, I can't remember when I last had stitches, but if I had them more than one day, it's probably protracted from my perspective. Well, Your Honor, the problem here is that the judge did not go through any analysis whatsoever of proportionality. We're talking about, as far as injury, we've got a three-point and a five-point and the guidelines say if it's in between, you pick the four-point. He did none of that analysis whatsoever. There's got to be more for you to determine whether or not this was serious bodily injury of the five-point type. What's he doing at page 24, 25, and 27 of the record where he's going over the fact that she received a broken nose, six stitches above her right eye, in addition to being kicked in the left leg that she'd injured in the car wreck? Just a normal evening at home. I guess so. Actually, it was a normal afternoon. The fact of the matter is that there's a reason in the guidelines that they have those three different categories, the three-point, the five-point, or the seven-point. And each one the guideline says if the injury's in between, you've got to pick the one that's in between, which is the four-point in Ms. Blackman's case. But I guess where I'm losing you, Mr. Gallagher, is the sentencing judge goes through the facts of what happened. He talks about the injuries that the victim sustained. He has the treating physician's report and opinion included in the pre-sentence report, which he accepts as established fact. And then he picks the level of the sentencing guidelines. Absolutely. And we can see how he got there. I guess what I don't understand is what more do you think that Gall requires? I think what it requires most particularly when there's a credibility issue like this, that he resolve it on the record. Coming to the conclusion is not an analysis. Where do you find that in Gall? What page? Your Honor, all I can say is that it requires the district court to adequately explain the chosen sentence to allow for meaningful appellate review. Well, what's he talking about? Rule 32 requires where there is an issue that is legitimately raised. Actual dispute. This was an actual dispute. This was an actual dispute. He found that she suffered serious bodily injury. There's a credibility issue between what she said on the stand and what she said to the probation officer twice. But the ultimate factual determination the judge had to make for purposes of the enhancement was whether he suffered, as you put it, serious bodily injury, bodily injury, or if it was in between, some condition in between. Right. Okay? He found, based on everything we had in front of him, he found that it was serious bodily injury. And there's ample evidence in the record that would support that. Well, he certainly resolved the dispute in coming to a conclusion. Well, is it, counsel, can you help me look at excerpt of record page 42? It's page 25 of the sentencing transcript. Starting at line 6, where he says, I find that declaration to be unsupported in facts. I find it to be lacking in credibility. And I reject it as a declaration of fact. And then he goes on to talk about the nature of the assault. Most respectfully, Your Honor, that's with regard to whether or not Deanna was defending herself in a fight. Okay. That doesn't go to the issue of the injuries. Okay. And if we're going to move to that, then I have to say that there was a significant lack of evidence upon which the judge made that finding, because he relies, he relies in that statement on her testimony. And now we are tied in with the specific intent for the offense, because the judge relies on her testimony, makes no mention of the fact that she lied to the probation officer, if in fact that's what she did. I think she told the truth to the probation officer. Counsel, as I recall, Gall, the Supreme Court said the district court has to say enough at the sentencing so that a reviewing court on appeal can look at what the sentencing court did and essentially evaluate the record in order to determine whether or not the   to say that the court did not do justice to the factors and the guidelines properly. Is it your position that this record is simply inadequate under Gall to permit us to do that? Well, certainly that is my ‑‑ that's my position on all three of these issues, but most particularly with regard to the seriousness of injury issue. And the Court's quotation from page 25, excerpts of record 42, relates to the specific intent. And whether or not you believe Deanna, when she says they got into an altercation and during that altercation in an attempt to break away, she grabbed the crutch and whacked Patricia. Now, the judge didn't believe that. Right. But he didn't say ‑‑ So that is an adverse credibility finding as to that portion of the assault. Right. But as Judge Pius pointed out, we're dealing with two different ‑‑ No. I understand. But earlier I thought you had said he'd made no credibility determination. Here's an example of one where he did. I apologize. If I made that statement, I think I was directing it more to Judge Pius's question. He did make an adverse credibility decision. But he's relying on the testimony of Patricia Renville at the time of the sentencing, not the statement that Patricia Renville made to his United States probation officer, a United States probation officer who then testified, that's not what she told me two months ago. Well, I understand that. But he's making a determination after the witness has just testified under oath in front of him in open court, right, as opposed to a telephone conversation with the court's probation officer. That is true. That is not sworn.  Okay. All right. Thank you, counsel. Thank you, Your Honor. Leif Johnson again for the United States, Your Honors. The issue of serious bodily injury, I'd just like to point out for the Court that that's what she pled to. You know, her plea agreement was an assault resulting in serious bodily injury. And the Federal definition of that crime is very similar and includes all of the elements of serious bodily injury. And the Federal definition of a serious bodily injury is that it's a bodily injury that applies under the guidelines. So it appears that he was going back to Judge Haddon after entering a plea and basically saying, we don't plead guilty. This is one of these cases, and we see that. Well, he's asking Judge Haddon to exercise his discretion. Yeah. I understand. Looking at the 3553A factors, she was a mom. She had how many kids? Three kids. There's a family. There's some connection here. There are all kinds of reasons that were advanced to Judge Haddon to allow him to exercise some discretion to lower the sentence. He chose not to. I agree, Your Honor. But as to the specific issue of whether this was a serious bodily injury, I mean, Mr. Gallagher even described it as a serious bodily injury in his colloquy to the Court. I mean, it was they entered a plea agreement in this case because there were two charges. One was the dangerous weapon charge and one was the serious bodily injury charge. They chose this one because then the defense could preserve an intoxication defense, but they chose that route. And serious bodily injury applies here. As to the credibility of Ms. Renville and whether or not that had any bearing on the Court's ultimate findings or whether the Court had to make further findings, what is of interest is that the conflict that Mr. Gallagher drew out during the testimony was really immaterial to any particular issue regarding the beating itself or the nature of the injuries. The conflict that Mr. Gallagher drew out was that you didn't tell the probation officer that you stand by your earlier statement. And obviously, she was changing her statement to a limited degree. She was protecting her cousin in a letter that she had written to the probation office, and obviously, she rethought that when she testified. But there is no direct conflict between her testimony and that written testimony. Mr. Johnson, maybe you can help me on this. I'm looking at page 23 of the – this is of the sentencing hearing. Yes. And it appears that Mr. Gallagher had made an impassioned argument before about if you've got, you know, step three or step five, rather – you've got to pick, you know, step four, rather than level four. Right. The same argument he has well made here today. And then the Court, in considering some of the controverted facts here, said on line 13 – he's quoting subdivision B2 from the application notes, in a case involving a dangerous weapon with the intent to cause bodily injury, the Court shall apply both the base level – both base defense level and subdivision B2. And then the Court says, now the conclusion that the Court draws from these two declarations is that the Court must make a determination of this particular question. Was there an intent to cause bodily injury? In making that determination, I deem it to be the Court's responsibility to take all of the factual evidence, presumably both what is easily one side or another, that is, for the Court to consider that factual evidence in the totality of the circumstances in making this determination. Now, the way I look at that, it appears he did take into account the things that were said that were contradictory. Yes. But ultimately made a conclusion. Is that your understanding of what the Court said? Absolutely, Your Honor. I mean, to the extent there was some conflict, it wasn't material. The Court considered everything. Mr. Gallagher had every opportunity to make these arguments, and he did. He made them well. And there was no, I think, mistake of law. The judge never came out and said, for instance, I find intoxication irrelevant for the purpose of this hearing. He did not say that. He did not foreclose, Mr. Gallagher, from putting on additional testimony that would have impugned the credibility of Ms. Renville. He simply took it all together. And that's what we ask the courts to do in these hearings. Yes, Your Honor. Well, that's really all I have to say, except to say that in this case, as in the last case, the Court made specific findings on intent that were sufficient to basically get us over the threshold of the intoxication issue raised. And under Rule 32, I don't think there's any further requirement. The Court did what a jury should do, and that should be enough. Thank you. Thank you. Thank you. Thank you. We had a good discussion on this case, and we'll just submit it at this time. Both this case and the earlier case of Guardrappi are submitted. Yeah, yeah, no, take a break. Counsel, good to see you both again. I'm sorry, Your Honor, I didn't. I said good to see you both again. Oh, nice seeing you, Your Honor. Thank you.
judges: Paez, Tallman, Smith M.